MILLS, sheriff, *vs.* WILLIAMS, et al.

MILLS, Sheriff, *versus* WILLIAMS, et al.

1. An execution does not lose any lien, acquired at the time of its issuance, by being subsequently suspended in its operation on particular property, by proceedings to try the right of such property, claimed under the act of 1812.[a]

2. Such execution, (at the time so arrested, as to any particular property, or at any other period,) may rightfully be levied on other estate of a defendant, for its satisfaction; and does not lose its preference, in point of time, over other executions levied, after the time of the lien first acquired, and arrested by a trial of the right of property.

3. Where A. and B. being obligors in a bond, given under the act of 1812, (on laying claim to property, levied on by a Sheriff,) on the property having been found subject to the execution, paid the judgment obtained against their surety on the bond; and afterwards, when the same property was again levied on under other executions, procured the issuance of an execution on the judgment, on which that had issued upon which the right of property was tried, and had it levied on the same property; and it was sold under all the executions:—held, that the proceeds were to be applied to the benefit of the execution paid off by A. and B.

In error from Madison county court.—This case came up for the object of settling a question, arising in reference to the priority of the liens of sundry executions, which had been levied on a slave, the alleged property of one Houson. The slave was first levied on by virtue of an execution in favor of Williams, issued from Madison county court. Asa and William Hodges as executors of the estate of their father, claimed the slave, as provided for under the statute, and gave bond for damages and the delivery, with one Brahan, as surety. The question of the right of property was tried in Madison circuit court, and determined against the claim. The bond for the delivery of the slave having been forfeited, a judgment, on motion, was had against Brahan, the surety, on

aAikin's Digest, page 167.

which execution was issued, and paid by the Hodges. Two other executions from the Circuit court of Madison, one in favor of Williams, and one in favor of Murphy & Erwin, being subsequently levied on the slave in question, the Hodges procured the issuance of an execution, on the judgment originally obtained by Williams in the county court, and under which the claim to the property had been tried, and had it also levied on the slave. The latter being then sold under all the executions, the question was raised, as to whom the proceeds should be paid. The court below decided that they should be applied to the satisfaction of the execution discharged by the Hodges; which was the cause of error assigned in this court.

LIPSCOMB, C J.  This was a motion against the Sheriff, the plaintiff in error, to compel him to apply money, to the benefit of the plaintiffs below, made under the following circumstances: Charles Williams sued one William Houson, in the county court of Madison county and obtained judgment against him, on which an execution issued and was levied on a negro girl, named Belinda. The girl was claimed by Asa and William Hodges, the plaintiffs below, as executors of their father's estate, and bonds given by them, according to the act of 1812, to Sheriff for such damages as should be assessed, and to the plaintiff for the delivery of the property, if it should be found subject to the execution levied on it. A trial of the right of property was had, at the November term, 1829, of the circuit court of Madison county, and the property was found subject to the execution which had been levied on it. An execution was sued out, returnable to the succeeding May term, which was re-

turned *nulla bona.* There was a failure to deliver the girl levied, and the bond was returned forfeited; and on motion, judgment was rendered against Brahan, the security in the forthcoming bond, and execution sued out: the Hodges then paid the amount of the execution against Brahan, their security. In September, 1829, an execution issued from the Circuit court of Madison county, in the name of Murphy & Erwin, against one Ryley, and the said William Houson, and was levied on the same girl, Belinda, as the property of Houson. The Sheriff returned that he had levied on the girl, but had not sold her, because she had been claimed on the previous levy, and the right of property not yet tried: an *alias* was sued out and levied again on the same girl, in May, 1830, subsequently to the trial of the right of property. An execution was sued on another judgment in favor of Williams, obtained in the Circuit court of Madison county against Houson, and levied on the same girl two days before the alias execution of Murphy and Erwin had been levied.

At the time the two last executions were levied, the Hodges had paid only a part of the amount of the execution against Brahan, their security in the forthcoming bond: under these circumstances they procured the issuance of an execution on Williams' county court judgment, (the same on which the execution that had been first levied on the girl Belinda, when she was claimed by them as the property of the estate of their father,) for their benefit, and had it levied on the girl, and then paid the balance of the execution against their security, Brahan. The slave was subsequently sold under all three of the executions, and the Sheriff not knowing which had a right of pre-

ference, a rule was entered against him, and the court directed the money proceeding from the sale, to be applied to the benefit of the Hodges, to the amount of the execution they had paid against Brahan.

It is contended that, notwithstanding the proceedings had on the first levy, the trial of the right of property, and the payment of the amount of the execution on the forfeited forthcoming bond, by the Hodges, the slave was subject to the execution sued out by Murphy and Erwin; that by paying the amount of the execution, the Hodges acquired no lien; that the execution from the county court for their benefit was void, because it issued on a judgment that had been merged in the judgment of condemnation in the circuit court and satisfied by the proceedings there had.

By the act of 1812, when an execution has been levied on property claimed by another, the claimant is required to give bond to the sheriff, to pay such damages as may be assessed against him, if it should be found that the claim had been merely interposed for delay : and another bond to the plaintiff in execution for the delivery of the property, if it should be found subject to the execution. On this being done the sheriff is required to make a return of the bonds to the next ensuing term of the circuit court, when and where an issue is required to be made up under the direction of the court.

The execution was suspended in its operation on the property levied on, but it lost not the lien acquired. It was not superseded, and might at the same, or any other time have been levied on other property for satisfaction. In the circuit court, in the event of a condemnation of the property there could have been but two judgments, one for the damages, if any should

MILLS, sheriff, vs. WILLIAMS, et al.

be assessed, and the other for the amount of the execution on the delivery bond, if it should be forfeited by the claimant failing to have the property forthcoming. But it seems clear, that one or both of these judgments would not affect the original judgment on which the execution had issued, because the execution may have acquired other liens, and may have been satisfied in whole or in part from other property, and in such an event, the plaintiff in execution, would have been entitled to no more than his cost and damages, and the amount remaining unsatisfied, if any, on his execution.

The execution could have run from the county court against all the property of the defendant until it was satisfied; there is no question, but when it was levied first on the slave Belinda, it acquired a claim to satisfaction as far as the proceeds of the sale of her would have went; this was prior to the lien of any other of the executions: a majority of the court believe that the lien then acquired, was not lost by the trial of the right of property. The judgment had not been satisfied, when the execution issued for the benefit of the Hodges and it might therefore well have run. But we believe if the judgment had been fully satisfied by the Hodges before the issuance of the execution, that by so doing the rights of the plaintiff in the judgment were subrogated to them, and entitled them to a preference, for the amount they had paid. We can not believe that the law would impose on them, the payment of the amount of the execution on the delivery bond, as a penalty, and take away from them the privilege of securities. That they were acting in good faith, as representatives of their father's estate, when they preferred their claim,

is proved by the fact, that no damages were assessed by the jury on condemning the property levied on. The courts of law will always, when it is in their power, protect the equitable lien of a party in the appropriation of a fund in their hands. And in this case, had there been a defect of a legal right to the money, the equitable right of the Hodges would have prevailed. But we believe that they had both the legal and equitable right, and consequently that there is no error in the judgment.